**In re P. I. NWAMU and P. I. Nwamu Associates, Inc.**

**No. M11–188.**

United States District Court, S. D. New York.

Nov. 4, 1976.

Stein, Davidoff, Malito & Katz, New York City, by Richard N. Runes, New York City, for P. I. Nwamu and P. I. Nwamu Associates, Inc.

Robert B. Fiske, Jr., U.S. Atty. for the Southern District of New York, New York City, by John J. Kenney, Asst. U.S. Atty., New York City, for United States of America.

MacMAHON, District Judge.

Claiming unlawful searches and seizures, in violation of the Fourth Amendment, P. I. Nwamu Associates, Inc. ("the corporation") and Patrick I. Nwamu move for the return and suppression of the "seized" evidence and to quash grand jury subpoenas duces tecum served upon certain of the corporation's employees on April 15 and 16, 1976.

The circumstances surrounding the employees' surrender of documents and other objects to agents of the Federal Bureau of Investigation, upon service of "forthwith" subpoenas upon them, raise substantial questions of unlawful search and seizure, as well as frustration of the power of the court, under Rule 17(c), Fed.R.Crim.P., to modify or quash a subpoena "if compliance would be unreasonable or oppressive." Among other things, the government contends that the movants consented to the agents taking the documents and objects involved. The movants deny consent.

We granted and held an evidentiary hearing to resolve the issues. Based on the evidence there received, we now find the following facts:

Special Agent Gulley of the FBI appeared at the corporation's offices on April 15, 1976 and served on David Singler, an officer of the corporation, a grand jury subpoena duces tecum issued by the clerk of this court on the same day. The subpoena was addressed to "ANY PERSON ON THE PREMISES OF P. I. NWAMU, INC. AT 489 FIFTH AVENUE, NEW YORK, N.Y." and commanded the person served to appear "forthwith" before the grand jury for the Southern District of New York, at Room 1401 of the Courthouse, to testify and to produce, "at the time and place aforesaid," certain files, documents and records.

Singler attempted to communicate with the corporation's attorneys but was unsuccessful. He then located some of the files sought by the subpoena and discussed with Gulley the existence of another file, entitled "Felix Ijeh." Agent Gulley told Singler that it was a "forthwith" subpoena "and that the records should be produced immediately." Replying to Singler's question, Gulley told him he must turn the records over. When Singler asked what would happen if he did not, Gulley told him, "you would be in contempt of court." Gulley then told Singler that he "would take the documents in lieu of his appearance before a federal grand jury." Confronted with the agent's directions and threats, Singler surrendered the documents to Gulley, who took them not to the grand jury "forthwith" but straight to FBI headquarters in Manhattan.

The next morning, April 16, 1976, Special Agent Chandler, accompanied by two other agents, appeared at the corporation's offices with several more subpoenas. Two were subpoenas duces tecum, again returnable "forthwith." One called for the "Felix Ijeh" file and was served on Singler. Another called for the corporation's "Selectric" typewriter balls and was served on Madelyn Hill, a secretary employed by the corporation. A third subpoena, for personal appearance only, was served on Patrick Nwamu, the corporation's president.

Singler obtained a file marked "Felix Ijeh." Hill produced two typewriter balls, one right from the typewriter she was then using, when Chandler told her "what it [the subpoena] calls for is the IBM Selectric typewriter ball that you have in that machine." When Hill asked how she could continue typing, Chandler replied that she could "call the people who have the service contract on your typewriter and ask them to give you a new one, explain what happened."

Possession of the "Felix Ijeh" file and the typewriter balls was surrendered to Chandler at some point. Chandler was called into Singler's office before he left the premises, however, and spoke on the telephone with Mr. Runes, Nwamu's attorney. Chandler testified:

"I told him [Runes] that I had just served a forthwith subpoena for the typewriter ball and for the Felix Ijeh file.

I said, 'They are forthwith subpoenas and I have offered Mr. Singler and Miss Madeleine Hill transportation down there so they can get back as quickly as possible.'

He advised me that there is no such thing as a forthwith subpoena and they are not going anywhere, that they are— neither is the file. Nothing is to leave that office.

I advised him I was an emissary of the court. I already had possession of the file, had the typewriter balls and I was going.

He said, 'you are going to jeopardize your case.'

I advised him that's a legal problem, a legal question I have no control over. All I know is I have been authorized to serve these subpoenas, I have to serve these subpoenas, I have to serve them and the items have been turned over to me. If Mr. Singler wanted to ride a subway as well as Mrs. Hill, they were more than welcome to do so. I was trying to make life easier for everybody.

At that point he said, 'They are not going and I don't want that file to leave either.'

I said, 'That's not the question. If they want to ride with me they are more than welcome to. The file and the ball are going.' "

Singler and Hill remained in the office, but Chandler left with the "subpoenaed" items.

The government first contends that it is within the constitutional power of the grand jury to command the immediate production of documents. The government next contends that, in any event, the persons served with these subpoenas "voluntarily" turned the items over to the FBI.

■ Even if we accept the government's contention that a grand jury has power to compel a witness to appear before it and produce certain documents and things "forthwith" upon the return of the subpoena, it by no means follows that an agent of the FBI has power, when armed with such a subpoena, either to seize the items sought or to demand their immediate surrender to him on the spot under threats of contempt. It is clear, moreover, that however broad the investigatory powers of a grand jury, it may not use a subpoena duces tecum in such a way as to infringe upon the Fourth Amendment "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." [1]

We are aware of only two cases involving subpoenas returnable "forthwith." In *Application of Kelly*, 19 F.R.D. 269 (S.D.N.Y. 1956), the petitioner sought to vacate the subpoena, not on the ground that it was unreasonable or oppressive because it was returnable "forthwith," but on the ground that it was so sweeping that the petitioner would be "deprived of access to its own records, which are essential to its proper functioning." [2] The court limited the

government's custody of the records and allowed the petitioner to have the records part of the time, but did not consider per se the forthwith nature of the subpoena. Significantly, however, the court took no action on the government's cross-motion to punish the petitioner for contempt.

In *United States v. Re*, 313 F.Supp. 442 (S.D.N.Y.1970), a Special Agent of the Internal Revenue Service served a forthwith subpoena duces tecum upon Blois, an accountant whose clients were under investigation. The subpoena called for the workpapers and other documents then in Blois' possession. He was a relative of the targets of the investigation, and there was some likelihood that he might tamper with the documents. Blois advised an Assistant United States Attorney that he was unable for personal reasons to comply with the subpoena "forthwith," and the Assistant excused immediate compliance upon condition that Blois deliver the documents that evening. Blois "readily consented" and released the documents to an agent of the Internal Revenue Service that evening. Among other challenges, the court considered whether the use of a forthwith subpoena constituted an abuse of process and found no showing that the "forthwith direction of the subpoena was at all improper under the circumstances," [3] grounding its conclusion on the fact that there could have been no prejudice to the defendants by the forthwith requirement of the subpoena because immediate compliance had been excused. The court went on to say:

"Finally, it is difficult to see how excusing Blois from appearing forthwith before the grand jury on January 23 in any way transformed the subpoena procedure used into an unlawful search and seizure. Having in effect requested and obtained an adjournment, Blois was in no position to complain that the forthwith requirements of the subpoena as drawn were not

1. *Hale v. Henkel*, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906); *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886).

2. *Application of Kelly,* 19 F.R.D. 269, 270 (S.D. N.Y.1956).

3. *United States v. Re*, 313 F.Supp. 442, 449 (S.D.N.Y.1970).

insisted upon. While it may not be the function of the United States Attorney to excuse a witness from appearing before a grand jury, *United States v. Birrell*, 242 F.Supp. 191 (S.D.N.Y.1965), under the circumstances of this case it is plain that the Government could gain no possible advantage by the delay, either at the expense of Blois or of the Res, and that the arrangement was made solely for the convenience of Blois. It does not lie in the mouth of the Res, who vigorously attack the forthwith nature of the subpoena, to complain that the Government gave Blois extra time to comply." [4]

Here, however, the explicit command of the subpoena to produce the items "forthwith" was never waived by the government. Nor did the agents explain that the persons served were not required to surrender the items to them, then and there. Rather, they treated the subpoena as though it were a search warrant calling for the immediate production and surrender of the documents to the agents on the spot and proceeded to enforce it with threats of contempt. They then took it upon themselves to excuse personal appearance in exchange for immediate surrender of the subpoenaed items.

■ The subpoena was not a warrant. It gave the agents no authority to arrest or otherwise compel the movants' employees either to accompany them to the offices of the FBI or to the grand jury. Nor did it authorize the agents to seize subpoenaed items, nor to get and take the items with them if the employees chose to "ride the subway." Such courses of action required a warrant, issued by an objective magistrate, based on a showing of probable cause.[5] Lacking either type of warrant, the agents derived no authority from the "forthwith" subpoena to "execute" the subpoena by demanding that the employees either accompany them to the grand jury immediately or hand over the subpoenaed items unless

they did. The explicit command of the subpoena was not to go with the agents or give them the items, but simply to appear forthwith before the grand jury to testify and there produce the subpoenaed items.

■ The agents' function here was neither to enforce, nor to waive, nor to limit either the terms of, or compliance with, the subpoena but simply to serve it. Clearly, the power to quash, alter or enforce the subpoena lies not with the government agents but with the court.[6]

■ Moreover, when the agents "excused" personal appearances and took immediate possession of the documents and typewriter balls on the spot, as if the subpoena were a search warrant, the government gained an unfair advantage. Taking possession of the items denied movants their right to independent judicial determination of the existence of probable cause as the basis for a search warrant, required by the Fourth Amendment. Excusing personal appearance before the grand jury foreclosed any opportunity movants had to raise and litigate that issue before the judge attending the grand jury proceedings. In this district, a witness appearing before a grand jury always has a meaningful opportunity under Rule 17(c), Fed.R.Crim.P., to challenge the constitutionality or other invalidity of a subpoena before the judge presiding in Part I. The very existence of a right to challenge presupposes an opportunity to make it. That opportunity was circumvented, frustrated and effectively foreclosed by the methods employed here.

■ The methods used here allowed the government to obtain possession of subpoenaed documents not by the appearance of the witness "forthwith" before the grand jury, where the witness is clothed with rights protected by the court, including the right to challenge the subpoena by refusing to comply until the court ruled on its validity and ordered compliance, but by compelling instant surrender of the subpoenaed

---

**4.** *United States v. Re, supra,* 313 F.Supp. at 450.

**5.** Rules 4 and 41, Fed.R.Crim.P.

**6.** Rule 17(c), Fed.R.Crim.P. See *United States v. Re, supra,* 313 F.Supp. at 450; *United States v. Birrell,* 242 F.Supp. 191, 204 (S.D.N.Y.1965).

items to the agents, without court order, by threats of contempt and claim, or color, of authority. This, we think, constitutes an unlawful search and seizure, in violation of the Fourth Amendment, however broad the subpoena power of the grand jury.

We are not persuaded by the government's contention that movants, or their employees, consented to surrender the items to the agents simply because the items were handed to the agents at some point. As the Supreme Court said in *Bumper v. North Carolina*, 391 U.S. 543, 548–550, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968):

> "When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given. *This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority.* A search conducted in reliance upon a warrant cannot later be justified on the basis of consent if it turns out that the warrant was invalid. The result can be no different when it turns out that the State does not even attempt to rely upon the validity of the warrant, or fails to show that there was, in fact, any warrant at all." (Emphasis added.)

■ We are convinced from the totality of circumstances shown here that all the government has proved is that the movants or their employees acquiesced and yielded to the appearance, and express claim, of lawful authority. Moreover, even a validly issued grand jury subpoena duces tecum does not confer the power of seizure in the face of a refusal to comply. The court, in *United States v. Re, supra*, said:

> "Of course, if the party to whom the subpoena is directed does not comply *the officers may not disregard his refusal and seize documents subpoenaed. Mancusi v. DeForte*, 392 U.S. 364, 88 S.Ct. 2120 [20 L.Ed.2d 1154] (1968). But the subpoena

itself is a process of the court and in the sense that severe penalties may be imposed for willful resistance, the effect of the subpoena on one who does not wish to comply is unquestionably more compelling than a simple request for voluntary compliance." 313 F.Supp. at 448 (emphasis added).[7]

Finally, we are guided in matters of consent by the teaching of *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973), where the Court held that "the question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances."[8]

Consultation with counsel was of no avail on April 16, for the agent took the subpoenaed items despite counsel's explicit direction not to remove them from the office. After considering "the totality of all the circumstances" in this case, we are convinced that these items were not presented to the agents on consent because they were not handed over freely and voluntarily, without any duress or coercion, express or implied.

■ Rights guaranteed by the Bill of Rights must be zealously guarded if they are not to be whittled away, little by little, through minor seemingly innocuous intrusions which may, over the course of time, result in significant erosion of those rights. The comment of the Court in *Boyd v. United States, supra*, 116 U.S. at 635, 6 S.Ct. at 535, is particularly apposite to this situation:

> "It may be that it is the obnoxious thing in its mildest and least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of pro-

---

**7.** See also Mr. Justice Marshall's discussion of the stigma and "potentially disruptive governmental intrusion into . . . private life" which attends grand jury subpoenas, in *United States v. Mara*, 410 U.S. 19, 43–44, 93 S.Ct.

774, 787, 35 L.Ed.2d 99 (1973) (Marshall, J., dissenting).

**8.** *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2044, 2047, 36 L.Ed.2d 854 (1973).

cedure. This can only be obviated by adhering to the rule that constitutional provisions for the security of person and property should be liberally construed. A close and literal construction deprives them of half their efficacy, and leads to gradual depreciation of the right, as if it consisted more in sound than in substance. It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon." [9]

We find, therefore, upon consideration of the totality of circumstances here, that compliance with the subpoenas would be unreasonable and oppressive; that neither movants nor their employees voluntarily consented to surrender of the subpoenaed items; and that the agents' taking of the subpoenaed items constitute an unreasonable and unlawful search and seizure.

Accordingly, we quash the subpoenas duces tecum of April 15 and 16, 1976, pursuant to Rule 17(c), Fed.R.Crim.P. and direct that the seized property be restored to movants.

The foregoing disposition of this matter makes it unnecessary to consider the contentions of Patrick I. Nwamu, grounded on alleged violation of the Fifth Amendment, and to examine the papers *in camera*, as suggested by the government.

The Clerk of the court is directed to release the packets and the government directed to return them to the movants.

So ordered.

---

**9.** See *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).