### In re IMMUNITY ORDER DATED APRIL 21, 1982.

### No. M–11–188.

United States District Court, S. D. New York.

Aug. 5, 1982.

---

Kasanof, Schwartz & Iason by Robert Kasanof, Lawrence Iason, New York City, for witness.

John S. Martin, Jr., U. S. Atty., S. D. N. Y. by Walter P. Loughlin, Asst. U. S. Atty., New York City, for movant.

## MEMORANDUM OPINION AND ORDER

SOFAER, District Judge:

On April 23, 1981 a grand jury in this district issued a subpoena duces tecum calling on the witness in this proceeding to produce certain pocket diaries and desk calendars. The witness refused to comply and was held in contempt by Judge Palmieri. Sanction was stayed pending appeal of the witness' fifth-amendment claims to the Second Circuit Court of Appeals. The Circuit Court remanded for further findings, 657 F.2d 5, and the matter was referred to the undersigned, resulting in a ruling that the pocket diaries, but not the desk calendars, were personal documents protected by the fifth-amendment privilege against self-incrimination. 522 F.Supp. 977. The desk calendars were accordingly transferred to the United States Attorney for use before the grand jury and the pocket diaries were ordered returned to the witness. The witness did not retrieve his pocket diaries, however, and they remained in the Court's possession pending possible appeals. No appeal was taken, but neither was any effort made by the witness to obtain the private diaries.

On September 16, 1981, the witness was indicted; he is currently awaiting trial before Judge Lowe. On April 21, 1982 the undersigned issued an order, pursuant to the Government's request, requiring the witness to produce the pocket diaries to the grand jury. As provided for by 18 U.S.C. § 6002, this order was subject to so-called use immunity: while the witness could not refuse to comply on the basis of his privilege against self-incrimination, any information contained in or derived from the pocket diaries could not be used against the witness in a criminal case. See Kastigar v. United States, 406 U.S. 441, 460, 92 S.Ct. 1653, 1664, 32 L.Ed.2d 212 (1972). The witness has thus far refused to comply with the Court's April 21 order, and the Government has accordingly moved for an order of civil contempt.

■ The witness maintains that under 28 U.S.C. § 1826 "just cause" exists to excuse his failure to comply. His most serious argument in support of this position concerns his right to be free from unreasonable searches and seizures under the fourth amendment. The witness asserts that, because the Government does not intend actually to use the diaries before the grand jury until the conclusion of the pending criminal trial against him, the grand jury subpoena is being used improperly in an attempt to "seize" private property.

The witness has cited no cases which directly support this argument. Indeed, the Supreme Court has stated that "the Fourth [Amendment], if applicable [to subpoenas], at the most guards against abuse only by way of too much indefiniteness or breadth in the things required to be 'particularly described.'" Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 208, 66 S.Ct. 494, 505, 90 L.Ed. 614 (1946); see In re Horowitz, 482 F.2d 72, 77 (2d Cir. 1973). The April 23, 1981 grand jury subpoena is narrowly focused on specific desk calendars

and pocket diaries. It plainly does not suffer from indefiniteness or overbreadth.

The witness, however, relies on Judge Weinfeld's statement in *Application of Kelly*, 19 F.R.D. 269, 270 (S.D.N.Y.1956) that "[a] subpoena duces tecum, unlike a search warrant, does not serve to disturb possession of property." *Application of Kelly* involved a grand jury subpoena of union records covering a six-year period. When the union president Kelly objected that these records were essential to the union's functioning, the Court did not quash the subpoena. Rather, it ordered a modification of the subpoena to provide that the union should deliver the records to the United States Attorney between certain hours for a two-week period. Thus, *Application of Kelly* makes clear that, although a subpoena duces tecum does not *serve* to disturb possession of property, such a subpoena might *result* in a disturbance to property possession incidental to serving its proper function of providing a grand jury with materials needed to conduct an investigation. Inasmuch as the union's possession of its records was significantly affected, the case plainly does not stand for an inflexible rule in favor of a grand jury witness' property rights. As Judge Weinfeld put it:

> [W]hat is involved is a proper balance between the right of the grand jury to the 'temporary use of the books' and the right of a party to be protected against unreasonable and oppressive production of records ...—a problem which 'can be accommodated to the convenience of the parties' and the necessities of each situation.

19 F.R.D. at 270.

In this case, the convenience of the parties and the necessities of the situation undermine the witness' claim that the subpoena is unreasonable or oppressive. The Government intends not to use the diaries before the grand jury until the completion of the witness' trial as a means of assuring that the diaries, subject as they are to use immunity, do not "taint" the conduct of that trial. The witness is now seeking through his fourth-amendment claim effec-

tively to preclude the Government from efficiently protecting the witness' fifth-amendment rights while also assuring grand jury's access to the diaries at an appropriate time. If the Government were forced to use the diaries before the grand jury at this time, the witness' pending trial would be needlessly complicated; if the grand jury were denied its subpoena until after the trial, the grand jury would encounter further delay in obtaining the documents, and their integrity might be jeopardized. (The documents initially came into the Court's possession because they may have been the target of a fire-bombing. *See* Affidavit of Assistant U. S. Attorney N. Akerman ¶ 5 (Oct. 16, 1981).) Finally, because the Government has expressed its willingness to copy the diaries for the witness, no reason is suggested to expect he will be prejudiced or inconvenienced by their remaining out of his possession.

*In re Nwamu*, 421 F.Supp. 1361 (S.D.N.Y. 1976), also relied upon by the witness, is inapposite. In that case the Court found that an FBI agent had unlawfully used a forthwith subpoena to seize documents when he demanded immediate production and surrender of the documents at the time the subpoena was served. Here, the Government seeks an adjudication of civil contempt for the witness' failure to authorize the production of the diaries for the grand jury. The subpoenaed documents themselves already have been turned over to the Court in connection with earlier proceedings. Nothing in the Government's actions in this matter resembles the precipitous measures which the Court characterized as a seizure in *Nwamu*.

■■■ The other claims raised by the witness to justify his refusal to comply with the Court's order lack substance. First, subpoenaed documents need not be presented exclusively to the grand jury in whose name they were first demanded. "That a different grand jury from the one which subpoenas the evidence is presented with that evidence is of little import. This procedure is common." *United States v. Kleen Laundry & Cleaners, Inc.*, 381 F.Supp. 519

(E.D.N.Y.1974) (Weinstein, J.). *See also In re Grand Jury Proceedings*, 658 F.2d 782, 784 (10th Cir. 1981) (*Kleen Laundry* language quoted with approval); *United States v. Halper*, 470 F.Supp. 103, 105 (S.D.N.Y.1979) (Weinfeld, J.) (same). It is thus insignificant that the grand jury which eventually considers any evidence of crime in the pocket diaries may be different from the grand jury that originally subpoenaed them. In objecting to this procedure the witness correctly points out that the United States Attorney lacks subpoena power. *E.g., United States v. Thomas*, 320 F.Supp. 527, 529 (D.D.C.1970). The witness, however, ignores that the modern grand jury system relies on the United States Attorney to perform a judicially recognized leadership role in gathering evidence for eventual presentation to a grand jury. *See United States v. Kleen Laundry & Cleaners, supra*, 381 F.Supp. at 521–22 (cases collected).

■ Second, no rule exists against the grand jury's seeking evidence in the form of an individual's pocket diaries at the same time that the individual is awaiting trial. *See Goldberg v. United States*, 472 F.2d 513 (2d Cir. 1973) (witness may be compelled to testify before grand jury about certain transaction despite pending criminal charges involving same transaction). As the Government has pointed out, the witness' protection against violation of the grant of use immunity is the Government's heavy burden of showing at trial that any evidence against the witness was derived from sources independent of the immunized evidence. *See, e.g., Kastigar v. United States*, 406 U.S. 441, 460, 92 S.Ct. 1653, 1664, 32 L.Ed.2d 212 (1972); *United States v. Nemes*, 555 F.2d 51, 54–55 (2d Cir. 1977).

Moreover, the Government has expressed its willingness to agree to the Court's holding the diaries pending the conclusion of the trial of the witness as a means of guaranteeing that the witness' fifth-amendment rights are not violated. At oral argument, the witness objected to such a procedure as an "impoundment" no less improper than the "seizure" he alleges the grand jury subpoena to be. In light of the Court's determination as to the propriety of the grand jury subpoena itself, it may be assumed that the witness is indifferent as between the diaries remaining with the Court or being transferred to the United States Attorney's evidence vault. In any event, impoundment is proper in a variety of situations, *see U. S. v. Birrell*, 242 F.Supp. 191, 202–03 (S.D.N.Y.1965), and the unique circumstances of this case justify the Court's continued retention of these documents pending the conclusion of the criminal trial against the witness as an alternative to turning them over to the Government.

Some doubt exists as to whether a holding of contempt is proper in this situation. Because the Court now possesses the documents it has decided to hold for the grand jury's later use, the witness is in no position to obstruct the Court's order. Coercive sanctions would thus plainly be inappropriate. The Court, however, does not wish to deprive the witness of the appeal to which he would be entitled by a proper finding of contempt. Indeed, although the record is somewhat unclear, it appears that Judge Palmieri's sanctionless contempt order which allowed the witness an appeal of the Court's initial fifth-amendment ruling, was issued notwithstanding the Court's ongoing possession of the documents. *See* 657 F.2d 5.

■ In any event, the Court's current possession of these documents is somewhat fortuitous in that the documents were originally turned over only for purposes of determining their fifth-amendment status in the earlier proceedings. Moreover, the witness is the uncontroverted owner of the diaries and, but for the Court's instant ruling, he is plainly entitled to their possession. Under these circumstances, the witness should be treated as though the diaries had been returned before the instant order requiring their production was issued. Given the witness' present demand for the diaries and his attorney's representations, the witness would undoubtedly have refused to produce the diaries, and would thereby have actively defied the Court's authority. Even as matters stand, the witness' demand for his diaries represents a significant, albeit ineffective, rejection of the Court's order to produce. Therefore, the witness is held in contempt.

Whether an order of contempt and thus an appeal of the Court's ruling as to the status of the diaries are appropriate under these circumstances is ultimately a matter for the Court of Appeals to decide. Even if that Court concludes, however, that a holding of contempt is inappropriate, an appeal may nevertheless be available under the rule of *Perlman v. United States*, 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918). *Perlman* permits an appeal of a District Court's subpoena order without a final order of contempt, where the subpoenaed materials are held by one other than the person whose rights would assertedly be violated by compliance with the subpoena, *i.e.* where the party desiring to appeal has no way to obtain a final contempt order via disobedience. *See United States v. Ryan*, 402 U.S. 530, 533, 91 S.Ct. 1580, 1582, 29 L.Ed.2d 85 (1971); *In re Grand Jury Subpoena*, 607 F.2d 566, 570–71 (2d Cir. 1979).

The witness is held in contempt as of the date this order is filed. The Government will, when it sees fit, move to obtain the diaries on 48-hours notice to the witness, but no later than 10 days after the witness' pending trial is completed.

SO ORDERED.