UNITED STATES of America,

v.

Harold BARR, et al., Defendants.

No. SSSS 84 Cr. 82 (MEL).

United States District Court,
S.D. New York.

March 14, 1985.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for U.S.; Michael R. Bromwich, Asst. U.S. Atty., New York City, of counsel.

Michael Kennedy, New York City, for defendant Harold Barr.

LASKER, District Judge.

Harold Barr moves to suppress evidence obtained from the Affiliated Answering Service ("Affiliated"). The issue presented is whether the circumstances surrounding the government's acquisition of mail through the use of a grand jury subpoena

were such that they constituted a warrantless seizure in violation of the fourth amendment. We hold Barr's fourth amendment rights were not violated.

On June 1, 1984 Harold Barr was arrested for, among other things, conspiracy to violate federal narcotics laws. After his arrest he was incarcerated in the Metropolitan Correctional Center ("MCC") where he remains pending the outcome of his trial.

During the course of an investigation into the suspected narcotics and narcotics-related activities of Barr the government learned that Barr employed Affiliated to receive mail and telephone messages for him. On June 4, 1984 a grand jury subpoena duces tecum was served on Affiliated. The subpoena requested production on June 12, 1984 of mail addressed to "Larry Freeman", an alleged alias for Harold Barr. Rather than bring the mail to the grand jury on that date, Affiliated complied with the subpoena immediately, that is, on June 4th. On June 11, 1984 the government secured a search warrant and opened the mail which had been delivered by Affiliated pursuant to the subpoena.

■ Barr argues that the mail should be suppressed because the government impermissibly used a subpoena duces tecum to obtain his mail in the first place, in circumvention of the warrant requirement. The government answers that "the subpoena duces tecum issued to Affiliated on June 1, 1984 was a wholly proper use of the subpoena process." [1]

■ Although the fourth amendment prohibits the issuance of subpoenas duces tecum which are overbroad, *Hale v. Henkel*, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906), a subpoena which compels production of evidence is generally not considered to be a "seizure" within the meaning of the Constitution, that is, a taking which cannot be undertaken without the authority of a warrant. *United States v. Dionisio*, 410

U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973); *accord United States v. Mara*, 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973). In comparing the grand jury subpoena process with fourth amendment seizures the *Dionisio* Court relied upon the diminished compulsion attendant in grand jury subpoenas as the critical distinguishing factor. *United States v. Dionisio*, 410 U.S. at 9–10, 93 S.Ct. at 769.

■ The grand jury, as the sole instrument through which felony charges are constitutionally brought, has broad investigative powers. *See, e.g., Costello v. United States*, 350 U.S. 359, 362, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956). The power to subpoena witnesses to testify and to compel the production of documents is accepted as indispensable to the grand jury's exercise of its authority. Although "personal sacrifice" is incumbent in the duty to appear before the grand jury, *United States v. Dionisio*, 410 U.S. at 10, 93 S.Ct. at 769 (citations omitted), the obligation to furnish evidence is essential to the administration of justice. *Id.* Accordingly, the benefits which an individual receives from performing his or her "civic obligation", i.e., a safer society, operate to lessen the compulsory nature of a subpoena. *See id.* at 9–10, 93 S.Ct. at 769.

The second distinction between the compulsion exerted by a subpoena and a seizure lies in the different nature of the two legal processes. Quoting with approval a decision of Judge Friendly, the *Dionisio* court stated:

[A seizure] is abrupt, is effected with force or the threat of it and often in demeaning circumstances, and, in the case of arrest, results in a record involving stigma. A subpoena is served in the same manner as other legal process; it involves no stigma whatever; if the time for appearance is inconvenient, this can generally be altered; and it remains at

---

1. The government argues in the alternative that Barr had abandoned his mail, (which impacts on any former expectation of privacy he may have possessed in the property). The fact that some of the mail was postmarked six weeks

before the date of the subpoena, by itself, does not establish that Barr intended to abandon his mail. Indeed, at least part of the time prior to service of the subpoena Barr was incarcerated in the MCC.

all times under the control and supervision of a court. *Id.* quoting *United States v. Doe (Schwartz),* 457 F.2d 895, 898 (2d Cir.1972), [*cert. denied,* 410 U.S. 941, 93 S.Ct. 1376, 35 L.Ed.2d 608 (1973) ].

▮ Despite the diminished compulsion of the subpoena process, however, a grand jury subpoena is not a "talisman that dissolves all constitutional protections". *Id.* at 11, 93 S.Ct. at 770. Further, "the rule has long been established that a subpoena duces tecum may not be used in such a way as to impinge upon Fourth Amendment rights". *United States v. Re,* 313 F.Supp. 442, 448 (S.D.N.Y.1970). The government devotes a substantial part of its brief to the argument that the subpoena duces tecum at issue in this case was not overly broad, an issue Barr does not seriously contest. However, even a subpoena duces tecum which is validly drawn and issued does not give the process server the right to seize the subpoenaed items. *Id.* citing *Mancusi v. De Forte,* 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968); *accord In Re Nwamu,* 421 F.Supp. 1361, 1366 (S.D.N.Y. 1976). Accordingly, the question before us is whether the agents who obtained Barr's mail from Affiliated overstepped the subpoena's legal boundaries.

▮ As a threshold showing, to invoke the fourth amendment successfully a defendant must demonstrate a reasonable expectation of privacy in the papers subpoenaed. *Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (Harlan, J., concurring) (1967); *cf. United States v. Miller,* 425 U.S. 435, 442, 96 S.Ct. 1619, 1623, 48 L.Ed.2d 71 (1976) ("[w]e must examine the nature of the particular documents sought to be protected in order to determine whether there is a legitimate 'expectation of privacy' concerning their contents"). For example, a defendant's fourth amendment rights may be implicated where the items obtained are personal documents. *Cf. In Re Horowitz,* 482 F.2d 72 (2d Cir.), *cert. denied,* 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973) (three filing cabinets were subpoenaed by the grand jury investigating business fraud and the trial court quashed the subpoena to the extent that it required production of wills, trust agreements and other personal records). On the other hand, an individual has no expectation of privacy in papers which are corporate records, *United States v. Lartey,* 716 F.2d 955, 961 (2d Cir.1983), or records required to be kept by law, *id.,* or, of course, papers in which the person has no possessory or proprietary interest, *cf. United States v. Re,* 313 F.Supp. at 447 (the Res could not challenge the taking of workpapers which were the property of their accountant).

▮ The government asserts that the mail it obtained from Affiliated was "business and financial correspondence" and "junk mail" and not "personal correspondence." Government's Supplemental Memorandum of Law in Opposition to Harold Barr's Motion to Suppress Mail Addressed to "Larry Freeman", at p. 2 n. * (filed Jan. 3, 1985). However, we do not interpret the decisions which hold that there is no reasonable expectation of privacy in corporate or other public records as precluding an individual's privacy interest in mail which relates to, for instance, his personal financial matters. Barr's personal mail is a type of property in which Barr ordinarily could have had a legitimate privacy expectation.

▮ Beyond the determination of the simple proposition whether the property seized is of a nature which the fourth amendment generally protects, no bright line rule determines when a subpoena infringes upon fourth amendment rights. The evaluation must be made from the facts of each particular case. *United States v. Lartey,* 716 F.2d at 961. A review of the few relevant cases in this circuit demonstrates that, as in *Dionisio,* the focus of the inquiry relates to the level of compulsion present when the subpoena duces tecum is served.

In *United States v. Lartey,* 716 F.2d 955 (2d Cir.1983), the defendant, a pharmacist, was suspected of unlawfully distributing certain prescription drugs. Forthwith sub-

poenas requiring production of records from the pharmacies out of which the defendant allegedly operated were served after the defendant had been arrested in connection with the crime. Acknowledging that forthwith subpoenas may "hamper the ability of one to contest its validity before a judicial officer" the court nevertheless declined to hold that such subpoenas were *per se* illegal, *Id.* at 962, and upheld the subpoena in the case before it. Factors the court considered included the exigent circumstances presented by the substantiated belief that Lartey would attempt to tamper with the documents if warned of the imminent subpoena, the lack of fourth or fifth amendment grounds upon which the defendant could have successfully moved to quash the subpoena and the lack of evidence that the agents coerced compliance with the subpoena, including the fact that the pharmacists upon which the subpoenas were served were allowed to communicate with an attorney as to how to respond to the subpoenas.

In *United States v. Re, supra,* the Res' accountant was served with a forthwith subpoena to hand over documents which Re had left in his possession. Despite the accountant's release of the records without challenging the subpoena and without first notifying the Res so that they could do so, the court held there was no seizure.

In contrast to the facts of *Lartey* and *Re,* the court in *In Re Nwamu,* 421 F.Supp. 1361, 1365–66 (S.D.N.Y.1976), found the methods used in the subpoena process included "compelling instant surrender of the subpoenaed items to the agents, without court order, by threats of contempt and claim, or color, or authority." After evaluating the totality of the circumstances the court held "that compliance with the subpoenas would be unreasonable and oppressive; that neither movants nor their employees had voluntarily consented to surrender of the subpoenaed items; and that the government agents' taking of the subpoenaed items constitute[d] an unreasonable and unlawful search and seizure." *Id.* at 1367. In so holding, the *Nwamu* court emphasized that the manner of service stripped the court of its authority to oversee the subpoena process and denied the defendant the opportunity to challenge its validity.

Although, as the decisions illustrate, the line between a permissible and an impermissible level of compulsion is not bright, guiding principles have evolved which aid in determining when a fourth amendment violation has occurred. Whether, and under what circumstances the person on whom process is served consents to the release of the items is a factor in evaluating the existence of a fourth amendment infraction. Clearly, a subpoena does not authorize the seizure of materials by the use of force or threats of violence, regardless of who has possession of the items or is charged with compliance. *Id.* at 1366.

A subpoena duces tecum may violate the fourth amendment if government agents improperly impinge on the defendant's right to contest the subpoena's validity or a court's authority to quash, alter or enforce it. *Id.* at 1365. Whether the defendant has notice of the subpoena is related to the opportunity to challenge the subpoena and is also a factor to be considered. Nonetheless, a mere lack of notice, standing alone, does not establish a violation. Indeed, the decisions indicate that the importance of notice as a factor diminishes when the defendant demonstrates an intent to tamper with or destroy documents, *United States v. Lartey,* 716 F.2d at 961–62; *United States v. Re,* 313 F.Supp. at 449, or when there are no grounds upon which to assert a successful motion to quash. *United States v. Lartey,* 716 F.2d at 961; *United States v. Re,* 313 F.Supp. at 450.

Further, as we interpret *United States v. Re, supra,* a decision we find persuasive, a defendant may be deemed to have constructive notice of the subpoena when he chooses to relinquish control of his property to another person if, when served with a subpoena, the person who has custody of the items can notify the defendant,

consult an attorney or move to quash the subpoena.

 Applying these principles to the case at hand we find Barr's fourth amendment rights not to have been violated. Barr does not argue, nor has he produced any evidence which indicates that Affiliated's compliance with the subpoena duces tecum was by other than voluntary consent. The agents who served the subpoena did not coerce compliance by force or threats or overstep their legal authority. Indeed, Affiliated chose to comply with the subpoena immediately although compliance was not called for until eight days after the date of service.

Although, because he was incarcerated when it was served, Barr did not have notice of the subpoena duces tecum, a motion to quash the subpoena on fourth amendment grounds would not have been successful in any event.[2] The subpoena was not overly broad nor, as we have concluded, did the subpoena process in this case constitute an illegal seizure. Further, irrespective of any lack of notice at the time the subpoena was served, Barr has now had ample opportunity, which he is by this motion utilizing, to raise any alleged infirmities in the subpoena process which he would have challenged in a motion to quash.[3] Moreover, Affiliated was free to consult counsel or move to quash the subpoena in Barr's absence.

 Finally, we do not accept Barr's argument that Affiliated, as a "bailee" (of Barr's mail), "could not legally permit the government to inspect or take the ... mail without incurring liability for conver-

sion...." Reply Brief of Defendant Harold Barr (filed Nov. 21, 1984), at p. 3. Whatever were the contractual terms between Barr and Affiliated vis-a-vis the handling of Barr's mail, the government was not bound by them.

The motion is denied.

It is so ordered.

---

**2.** In motion papers submitted by Raymond Sussman, Esq., one of Barr's former attorneys in this case, Barr asserts that "[i]n proceeding [to obtain Barr's mail] in this overzealous fashion the government ... violated the defendant's right to privacy and his 4th, 5th and 14th amendment rights...." Affidavit and Memorandum of Law at page 8 (filed September 26, 1984). In Barr's fourth set of papers on this heavily-briefed motion Barr asserts in a footnote that "Mr. Barr contends that production of the mail violated his fifth amendment right against self incrimination" because "the mere existence ... of the items ... furnish[ed] a link in the chain of evidence needed to prosecute."

We do not comment on the merit of this fifth amendment issue because the two general assertions, unsupported by an affidavit from anyone with personal knowledge of the underlying facts, are insufficient to effectively raise a fifth amendment claim. *Cf., United States v. Gillette,* 383 F.2d 843, 848 (2d Cir.1967) (absence of affidavit alleging personal knowledge insufficient to trigger a hearing).

**3.** Barr submitted four sets of papers on the mail issue and was given the opportunity to argue the motion on two separate occasions.