OPINION OF THE COURT
Francis A. Nicolai, J.
The defendants have been charged in a multicount indictment with various crimes that allegedly occurred in the summer of *745 1983. Included are four counts of offering a false instrument for filing in the first degree, a class E felony. Defendant Claremont Chemists Corp. is a pharmacy and defendant Martin Reitman, the president of the corporation, is a pharmacist who works for the corporate defendant. It is alleged that in the summer of 1983 six prescriptions for Antivert were filled by defendants but, in fact, a different item was dispensed. It is further alleged that the defendants filed false statements with a fiscal agent of the State of New York pursuant to the New York State Medical Assistance Program Pharmacy Claim Form, which statements claimed Antivert had been dispensed when it had not.
On June 29, 1984 certain documents were taken from the defendants by a special investigator for the Deputy Attorney-General of the State of New York, who was involved in investigating Medicaid fraud. Defendants move to suppress these items, as well as certain statements made by the individual defendants to the agents at the time of the taking.
The People assert that the seizure was pursuant to Mr. Reitman’s consent and that the statements were voluntarily made.
Where, as here, the People claim that a search and seizure are made pursuant to consent, the People must prove that the consent was freely and voluntarily given. (Bumper v North Carolina, 391 US 543, 548-549; People v Gonzalez, 39 NY2d 122, 128.) The People must establish the voluntariness of the statements made beyond a reasonable doubt before those statements may be admitted at trial. (People v Huntley, 15 NY2d 72, 78.)
A pretrial suppression hearing was conducted before me on May 30 and 31,1985. Special Investigators Thomas Mullins and John Hurley testified for the People. I find them both to be credible witnesses. Defendant Reitman testified on his own behalf and for the pharmacy. I find that Mr. Reitman was not completely candid and, therefore, this decision is on the facts as established by the People’s witnesses.
On June 27, 1984 a subpoena duces tecum was issued to an unidentified person of Claremont Chemists Corp. That is, the subpoena was blank in the area where a name would ordinarily appear. The subpoena called for the production of various records, including the prescription record book for the period January 1, 1983 to December 31, 1983 and for six enumerated prescriptions, which items are the subject of this motion. The return date of the subpoena was July 10, 1984. Prior to serving the subpoena, Special Investigator Mullins talked with the Assistant Attorney-General in charge of the investigation. Mr. Mullins was told that if the records were available and the *746 defendants wanted to turn them over, Mullins was to take them and give a receipt.
On June 29, 1984 Investigators Mullins and Hurley went to the pharmacy to serve the subpoena. Upon entering they spoke to Mr. Reitman, whom they did not know at that time. They asked who he was. He identified himself as the owner of the pharmacy. Mr. Mullins exhibited his identification badge and card and handed over the subpoena. At that same time he told Mr. Reitman that if any of the records were available he would take them and would give Mr. Reitman a receipt for them. Mr. Reitman then read the subpoena and said that some of the records were not available and that on the return date he would be on vacation and unable to attend before the Grand Jury. He said he had the prescription record book and the prescriptions.
The investigators were then asked to come into the prescription area behind the counter. The defendant turned over the record book and a binder with prescriptions. Investigator Mullins removed the six prescriptions listed in the subpoena. He tried to match those prescriptions with the record book and was unable to do so for some of them. He was told by the defendant that perhaps those had been overlooked when the prescriptions were entered into the book, a procedure which sometimes occurred on the day after the dispensing of the particular drug. There was also a discussion concerning certain handwritten notes on the prescriptions. Defendant admitted that he had made those notes and explained that certain of the letters referred to a code for the number of pills dispensed. He also told the investigators that the letter “G” referred to himself and that it meant George. He told them there had been another pharmacist named Martin and therefore he used the letter “G” to avoid confusion about who had filled prescriptions. He further said that it did not mean generic, but George.
The special investigators were present in the pharmacy for about 30 minutes. During that time defendant answered a phone call and filled prescriptions for customers who came into the store. During that time another person, a Jerome Lax, also entered the area and helped to fill prescriptions.
The People claim defendant Reitman has no standing to challenge the seizure of these items. The court disagrees. The name, Martin Reitman, was added to the subpoena by Investigator Mullins in the pharmacy. Nowhere is there any indication that Mr. Reitman is being served in any corporate capacity. Therefore, the court finds he has standing.
*747 “Consent to search is voluntary when it is a true act of the will, an unequivocal product of an essentially free and unconstrained choice. Voluntariness is incompatible with official coercion, actual or implicit, overt or subtle [cites omitted].” (People v Gonzalez, 39 NY2d 122,128, supra.) In this case, the court finds that the subtle official coercion renders the seeming consent of defendant involuntary. The Supreme Court, in Schneckloth v Bustamonte (412 US 218, 224), has held that the totality of the circumstances must be considered when there is a question of consent to a warrantless search and seizure. Gonzalez (supra) sets forth various circumstances that the court may consider in determining the voluntariness of consent. The first factor is whether the consentor is in custody or under arrest. In this case Mr. Reitman was free to move about at will and the court finds that he was not in custody. A person confronted by a large number of police is more likely to be intimidated by the authority present. (See, People v Cameron, 73 Misc 2d 790, 798; United States v Lewis, 274 F Supp 184, 188.)
The second factor enumerated in Gonzalez (supra) is the background of the consentor. A hardened criminal is more likely to be motivated by calculation than awe of the police. (People v Gonzalez, supra, at p 129.) There is no evidence to indicate that Mr. Reitman had any prior involvement with the police or with prosecutors and the court finds that his being confronted with officers displaying emblems of authority, i.e., a badge, and being presented with an official document would be in awe of an authority and accede to their request. Such submission to authority may not be called consent. (Bumper v North Carolina, 391 US 543, 548-549, supra.)
The third factor the court is to consider is whether the defendant had been evasive or uncooperative with law enforcement personnel. (People v Gonzalez, supra, at p 129.) Again, there is no evidence to indicate that prior to June 29,1984 Mr. Reitman had been evasive.
Finally, the court must consider whether the defendant was advised of his right to refuse to turn over the documents. (Schneckloth v Bustamonte, 412 US 218, 249, supra; People v Gonzalez, supra, at p 130.) It is beyond argument that at no time did either of the special investigators inform Mr. Reitman that he did not need to turn over the documents at that time, but was only obliged to bring them to the Grand Jury on July 10,1984.
Instructive in an analysis of this case is a consideration of the difference between a warrant and a Grand Jury subpoena duces tecum. (See, Matter of Hynes v Moskowitz, 44 NY2d 383.) A *748 subpoena may be challenged by a motion to quash prior to compliance. (Matter of Manning v Valente, 272 App Div 358, affd 297 NY 681.) Coercive circumstances and a failure to advise the defendant that he need not turn over the records immediately deprived him of this right.
More importantly, a subpoena is a preliminary investigatory tool, while a warrant is a device for obtaining evidence to be used against an accused. (Matter of Hynes v Moskowitz, supra, at pp 394-395.) It was the testimony of the officers that they were aware that a crime had been committed and that they were gathering evidence of that crime. It has been held that although an administrative search may be conducted on less than probable cause, where the mission is to gather evidence of a crime a warrant is required. (See, People v Pace, 101 AD2d 336, 340, affd 65 NY2d 684, and cases cited therein.) There is no evidence that these officers were entitled to conduct an administrative search, but in any event their testimony indicates that they were looking for evidence of criminal activity. The court concludes that a warrant was necessary in the absence of consent.
Parenthetically, no argument can be made that there were exigent circumstances which would justify a warrantless search. The agents testified that they had no suspicion that the documents would be destroyed. (See, People v Knapp, 52 NY2d 689-696.)
Although there are no cases directly on point in this State, In re Nwamu (421 F Supp 1361 [SDNY]), presents a similar fact pattern. While the law enforcement personnel were not as overbearing in the instant case as they were in Nwamu, the court finds that the defendants herein did not exercise their free will in the face of a claim of lawful authority and a demand for the production of the records. As was said in Bumper v North Carolina (391 US 543, 549, supra), “acquiescence to a claim of lawful authority” is not synonymous with consent.
Another factor considered by this court in reaching its determination is the passage of approximately one year from the date of the alleged crimes until the service of the subpoena. When there is ample opportunity to obtain a warrant the People must prove “the existence of sufficiently exceptional circumstances” to dispense with a warrant. (People v Knapp, supra, at p 694.)
The People urge that the documents would have been inevitably discovered and therefore there is no need to suppress. This court cannot agree. Defendants were denied an opportunity to challenge the subpoena. Further, there is no showing that the documents would have been available on the return date of the *749 subpoena. This is factually distinguishable from the situation in Nix v Williams (467 US_, 81 L ed 2d 377, 390). The People have not shown that very high degree of probability of independent discovery mandated by People v Payton (45 NY2d 300, 313). Also, while the reasoning in People v Zelmanowicz (93 Misc 2d 491) is appealing, this court cannot agree with the conclusion that any subpoenaed documents which are required to be kept are inevitably discoverable.
After consideration of all of the circumstances, the court concludes that the People have failed to meet their burden of proving that there was consent to the taking of the records and defendant’s motion is therefore granted and the prescriptions and prescription record book are suppressed.
The statements made by defendant are also suppressed. Statements made by the defendant were a direct result of the improper execution of the subpoena. The inquiries based on the record book and as to the notations on the prescriptions could not have been asked had those items not been improperly seized. (See, Wong Sun v United States, 371 US 471; People v Gordon, 87 AD2d 636.) The statements must be suppressed, and defendant’s motion in this regard is also granted.
The aforesaid constitutes the decision and order of this court.