UNITED STATES of America

v.

Gerardo A. RE, a/k/a Jerry A. Re, Gerard F. Re, and Charles A. Casagrande, a/k/a Charles A. Grande, Defendants.

No. 65 Cr. 566.

United States District Court,
S. D. New York.

June 2, 1970.

Whitney North Seymour, Jr., U. S. Atty., by William J. Gilbreth, Asst. U. S. Atty., for the Government.

Louis Bender, New York City, for defendants.

## OPINION

FREDERICK van PELT BRYAN, District Judge:

Defendants, Gerardo A. Re, Gerard F. Re and Charles A. Casagrande, move pursuant to Rule 41 Fed.R.Crim.P. to suppress certain documents which they claim were illegally and unconstitutionally obtained by federal agents from their ac-countant, Louis Blois, and to dismiss the indictment pending against them which they contend was obtained in part on the basis of such documents.

The pertinent facts were developed at an evidentiary hearing before me and are as follows:

In early 1961 James Irving, a special agent of the intelligence division of the Internal Revenue Service, was assigned to do a preliminary investigation of the Res with a view to uncovering possible criminal violations of the internal revenue laws. In the Fall of 1961 Irving was assigned to the office of the United States Attorney for the Southern District of New York to assist in an investigation of a scheme by the Res to sell unregistered stock in Swan-Finch Corporation. Irving worked under the direction of Assistant United States Attorneys Morrison and Liman and one of his functions was to investigate tax consequences of the Swan-Finch transactions.

In the first or second week of January 1962 a grand jury was empanelled to investigate alleged wrongdoing by the Res in connection with Swan-Finch stock transactions. This investigation had both securities law and tax law aspects and consequently special agents from the SEC as well as Irving from the IRS were assigned to assist the United States Attorneys in connection with the presentation of the case to the grand jury.

On January 22, 1962 Assistant United States Attorney Morrison prepared a subpoena duces tecum which directed Louis Blois, a certified public accountant who had done accounting work for the Res, to appear and produce forthwith before the grand jury in the United States Courthouse for the Southern District of New York "any and all books, records, documents and other papers, including, but not limited to, retained copies of tax returns, State and Federal, supporting papers and work papers" for the defendants and several partnerships in which they had an interest for the period 1954 to date. Morrison gave the subpoena to Irving with instructions to

serve it on Blois the next morning. The subpoena was actually dated January 9.

On January 23, 1962 at 8:00 A.M., Irving and Agent Jedlowski of the SEC arrived at and were admitted to Blois' apartment at 34 King Street, Manhattan. Irving served the subpoena and informed Blois that he was required to appear that morning before the grand jury and to bring with him the documents called for in the subpoena. Blois explained that he had not informed his employer that he was doing work for the Res and that this would be discovered if he did not appear at work that morning. In addition, Blois had been recovering from a protracted illness and had been warned by his physician to avoid any excitement. In view of these facts, Irving telephoned Assistant United States Attorney Liman and requested him to come to Blois' apartment. After Liman arrived, he too told Blois that he would have to appear before the grand jury that morning and said he would call Blois' employer and explain that fact to him. Irving then told Liman that Blois had been working for the Res without the knowledge of his employer and assured Liman that Blois was acting in good faith. Liman suggested to Blois that his appearance before the grand jury that morning could be excused if he agreed to turn over the papers, called for in the subpoena, to Irving that evening and not to tamper with any of the records. Blois readily consented and the government agents left. There were no instructions given to Blois not to communicate with the Res or with anyone else or to treat what was occurring as confidential.

The forthwith subpoena was used because Blois was a relative of the Res and it was feared that if Blois was given more time to comply he would contact the Res with the substantial possibility of document tampering. Liman testified that the idea for the forthwith subpoena originated with Morrison and that he knew of no instances in which it had been used on previous occasions by the United States Attorney's office. Irving, as a special agent of the Internal Reve-

nue Service, had the power under 26 U.S.C. § 7602 to compel the production of books and records in aid of a tax investigation and such administrative process required at least ten days' notice. However, once an IRS agent was assigned to the United States Attorney's office to aid in an investigation, it was the general practice not to use his power under 26 U.S.C. § 7602 and it was not used in this case.

On January 23, 1962, at 10:00 A.M., the grand jury which had been scheduled to hear the testimony of Blois met. Because of Blois' absence the testimony of a witness from the SEC was substituted.

On the evening of January 23, Agent Irving again arrived at the Blois apartment, in accordance with the arrangements made that morning. Blois turned over the papers called for in the subpoena to Irving, who in turn gave Blois a receipt. Irving brought the documents to his office that evening and the next morning delivered them to the United States Attorney's office. He worked with the papers at the United States Attorney's office for many weeks after that. Copies of the papers were made available to Blois' attorneys on request.

The grand jury indicted the Res in connection with the Swan-Finch stock transactions on April 2, 1962. The instant indictment, growing out of alleged criminal violations of the internal revenue laws and apparently unrelated to the Swan-Finch stock transactions, was handed down by a different grand jury on June 22, 1965. Apparently the papers produced by Blois were never submitted to the Swan-Finch grand jury.

The papers turned over to Agent Irving by Blois included Blois' work sheets, schedules of income and expense, brokerage statements, cancelled checks, correspondence, retained copies of Federal and New York State individual income and partnership tax returns relating to the defendants and their partnership interests in Re & Re, Re, Re & Sagarese, and the White King Turkey Farm, for the period 1954 to 1960. Most of this

material, however, consisted of accountant's work papers in Blois' handwriting. The United States Attorney in charge of presenting the tax case against these defendants to the grand jury has filed an affidavit stating that of the papers obtained from Blois on January 23, 1962 only his workpapers were used at all before the grand jury and only to the extent of preparing two exhibits.

■ Defendants have attempted to show that Blois' work sheets belonged to them pursuant to an oral agreement between themselves and Blois. The evidence on this point does not support their contention and I find that no such agreement was ever made or existed and that the workpapers were the property of Blois. As far as the other documents which were obtained from Blois, the Government apparently concedes that they belonged to the Res.

■ Defendants have also attempted to show that Gerard Re had some sort of possessory interest in Blois' apartment. They have failed to do so. At most the evidence shows that when Blois was away on vacation he would leave a key to his apartment with Gerard Re so that, if necessary, the latter could use the materials which Blois kept there. However, one of the other occupants of the Brownstone apartment building where Blois lived would have to open the lobby door which was locked and for which Re did not have a key. Such visits were quite infrequent. Moreover, at the time the subpoena was served Blois was not on vacation and there is no showing that Re then had a key or the authority to use it. No contention is made that any of the defendants were in Blois' apartment at the time the subpoena duces tecum was served or at the time the papers were given to Agent Irving by Blois or in the intervening period. This evidence is wholly insufficient to establish that Re had an interest in the premises.

On the basis of these facts defendants launch a broad constitutional attack on the manner in which the Blois papers were obtained. Specifically, they contend that their right to be free from unreasonable searches and seizures, as guaranteed by the Fourth Amendment, and their privilege against self-incrimination, as guaranteed by the Fifth Amendment, were jeopardized by the use of a forthwith grand jury subpoena under the circumstances of this case. In addition, they claim that there was an abuse of the grand jury process.

### Fourth Amendment

■■ At the outset the Government urges that these defendants have no standing to attack on Fourth Amendment grounds the manner in which these documents were obtained from Blois. Plainly the Government is correct with respect to Blois' workpapers. Jones v. United States, 362 U.S. 257, 259, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); Mancusi v. DeForte, 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968); Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). As I have already found, there was no agreement between the Res and Blois that his workpapers were to be the property of the Res.[1] See Application of House, 144 F.Supp. 95 (N.D.Cal.1956); United States v. Kleckner, 273 F.Supp. 251 (D. Ohio 1967). In the absence of such an agreement an accountant's workpapers remain his property, and not the property of the client. Hinchcliff v. Clarke, 371 F.2d 697 (6th Cir. 1967); Deck v. United States, 119 U.S.App.D.C. 240, 339 F.2d 739 (1964); In re Fahey, 300 F.2d 383 (6th Cir. 1961); Bouschor v. United States, 316 F.2d 451 (8th Cir. 1963); Sale v. United States, 228 F.2d 682 (8th Cir. 1956), cert. denied, 350 U.S. 1006, 76 S.Ct. 650, 100 L.Ed. 868 (1956); United States v. Boccuto, 175 F.Supp. 886 (D.N.J.1959). Similarly, as

---

1. The Government raises the not untroublesome question of whether an agreement between an accountant and his client that the accountant's workpapers are to remain the property of the client is against public policy. The absence of such an agreement here renders unnecessary a determination of that issue.

448

I indicated earlier defendants have failed to show any interest in the apartment where these events took place which would vest them with standing to make a Fourth Amendment attack. Certainly, Re, on the basis of his relationship to these premises, could not have had "a reasonable expectation of freedom from governmental intrusion." Mancusi v. DeForte, supra, 392 U.S. at 368, 88 S.Ct. at 2124. There is no claim made that Re was on the premises at the time the search occurred. Jones v. United States, 362 U.S. 267, 80 S.Ct. 725, 4 L.Ed.2d 697. Accordingly, I hold that the defendants have no standing to challenge on Fourth Amendment grounds the manner in which the government agents obtained Blois' workpapers.

■ The other papers involved in this hearing were clearly the property of the Res. Defendants have standing to challenge the procedure used in obtaining them.

■■ The rule has long been established that a subpoena duces tecum may not be used in such a way as to impinge upon Fourth Amendment rights. Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886); Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906); United States v. Guterma, 272 F.2d 344 (2d Cir. 1959); Schwimmer v. United States, 232 F.2d 855 (8th Cir. 1956), cert. denied, 352 U.S. 833, 77 S.Ct. 48, 1 L.Ed.2d 52 (1956). However, it is apparent from these cases that while the courts were laying down broad dicta as to application of the Fourth Amendment to a subpoena duces tecum, the facts indicated that the holdings actually rested on the Fifth Amendment privilege against self-incrimination. While under a proper factual showing a Fourth Amendment violation may be a ground for quashing a subpoena duces tecum or for suppressing evidence obtained pursuant thereto, care must be taken that the two amendments not be invoked interchangeably in situations where one or the other is plainly not applicable. In other words, each must be tested independently against the facts of a particular case.

■ Despite its compulsive nature and despite the lack of prior judicial scrutiny, a subpoena duces tecum is generally a legitimate means by which the Government may obtain records and documents relevant to criminal investigations or proceedings. This power was codified in Rule 17(c), Fed.R.Crim.P. and it was under this Rule that the subpoena in question was issued and served. Rule 17(c) itself provides the primary safeguard against the unwarranted use of the subpoena power entailing constitutional and other violations by providing that "[t]he court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive." Neither Blois nor the Res made such a motion in this case.

■ Defendants' Fourth Amendment attack is vague and confusing. Initially they seem to urge that Blois did not deliver the papers called for in the subpoena to the Government voluntarily, but rather was coerced into so doing. They say that the vital distinction between a search warrant and a subpoena is that in the case of the former the Government takes by force while in the latter compliance is voluntary. Hale v. Henkel, 201 U.S. 43, 81, 26 S.Ct. 370, 50 L.Ed. 652 (1906) (concurring opinion of Justice McKenna). To say that in the case of subpoena duces tecum compliance is voluntary is an oversimplification. Of course, if the party to whom the subpoena is directed does not comply the officers may not disregard his refusal and seize documents subpoenaed. Mancusi v. DeForte, 392 U.S. 364, 88 S.Ct. 2120 (1968). But the subpoena itself is a process of the court and in the sense that severe penalties may be imposed for willful resistance, the effect of the subpoena on one who does not wish to comply is unquestionably more compelling than a simple request for voluntary compliance.

■ But nothing that occurred here indicates that a seizure rather than

voluntary compliance in the above sense took place. Quite naturally, under the circumstance, Blois was agitated when the agents came to his home. This certainly was not caused by any extraordinary conduct on their part. Moreover, they informed Blois of his responsibility to comply with the subpoena by appearing before the grand jury that morning. It was plainly their responsibility to do so. While they did not tell him he had a right to challenge the propriety of the subpoena by motion before the court prior to complying if he so desired, they were under no such obligation. In any event, Blois, with long experience as a tax accountant, could hardly have been unaware of his right to resist the subpoena by making a prompt motion or by simple refusal to comply if he was willing to accept the consequences. While direction to appear forthwith may have placed some additional pressure on Blois, this alone or in combination with the other facts present here does not remotely indicate that a seizure rather than voluntary compliance took place.

The remainder of the Fourth Amendment claim seems more appropriately addressed to the question of abuse of process. Defendants say that the use of a forthwith subpoena was improper in that it did not give Blois reasonable notice or the opportunity to consult with the Res, the owners of some of the documents, or with counsel. There is no reason why Blois could not have communicated with the Res or consulted counsel if he wished, immediately or during the course of the day.

In addition, it is said somewhat inconsistently that Liman, having issued the forthwith subpoena, had no authority to excuse Blois' appearance before the grand jury on the morning of January 23, 1962 and to direct him to turn over the papers to Agent Irving that evening instead. Finally, what is perhaps the crux of this motion is the contention that the grand jury subpoena was used to obtain documents relevant only to a tax investigation then in prog-

ress and not to the Swan-Finch investigation which was before the grand jury then sitting. The defendants urge that the Government had no right to use a grand jury subpoena under these circumstances.

Initially it should be noted that service of a subpoena duces tecum on a person in possession of records belonging to another is proper. Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921); United States v. Cohen, 388 F.2d 464 (9th Cir. 1967); In re Grant, 198 F. 708 (S.D.N.Y.1912). Thus, even as to those documents concededly belonging to the Res, the Government had the right to subpoena them from Blois when it learned that they were in his possession. The defendants apparently do not dispute this.

As to their contention that the documents were not relevant to the 1962 grand jury investigation, defendants have simply adduced no proof of this. On the other hand, the Government has shown that the papers in Blois' possession were related to the tax aspects of the Swan-Finch investigation and that they were scheduled to be presented to the grand jury that morning. The fact that these documents were also related to the tax indictment filed in 1965 cannot affect the right of the 1962 grand jury to subpoena documents relevant to the inquiry it was then conducting.

The defendants have failed to show that the forthwith direction of the subpoena was at all improper under the circumstances. The direction of a subpoena duces tecum to produce documents forthwith is not per se invalid. Application of Kelly, 19 F.R.D. 269 (S.D.N.Y.1956). That the Government had reason to fear destruction or alteration of the documents is clear. Moreover, the defendants have failed to show prejudice to themselves or to Blois by the requirement that the documents be produced forthwith. They do not contend that the papers were too cumbersome physically to be produced that morning. They

have not shown that there was any ground on which Blois could have succeeded on a motion to quash the subpoena had he been given more notice and thus more time to consult with counsel. They certainly do not contend that the documents called for were burdensome in quantity or that the subpoena was not specific as to what was required. Similarly, assuming Blois had notified the Res about the subpoena if it had not been returnable forthwith, the defendants have failed to show that they had any grounds for quashing it.

 Plainly, Blois could not have asserted defendant's privilege against self-incrimination as a ground for failing to produce the documents called for. Cf. Bouschor v. United States, 316 F.2d 451, 458 (8th Cir. 1963); United States v. Boccuto, 175 F.Supp. 886 (D.N.J. 1969). Similarly, the subpoena having been served on Blois who had possession of the papers, the defendants were not being compelled to incriminate themselves and they could not raise the privilege. United States v. Cohen, 388 F.2d 464, 468 n. 9 (9th Cir. 1967).

 Defendants' contention that subsequent to the service of the subpoena they could have required Blois to deliver the papers to them and then could have asserted their privilege against self-incrimination is wholly without merit. United States v. Cohen, supra, on which defendants rely, does not support this proposition. In that case agents of the Internal Revenue Service requested Cohen, the taxpayer, to supply them with records pertaining to his tax liability for certain years. He told them the records were in the possession of his accountant. The next day Cohen requested and obtained the records from his accountant. A summons was then served on Cohen requiring him to appear and produce the records he had obtained from his accountant. The court quashed the summons on the ground that Cohen, as possessor of the records at the time the summons was served, could assert his privilege against self-incrimination in order to resist produc-

tion. That case does not indicate that a motion to quash would have been successful if a subpoena had been served on the accountant prior to his transmittal of the papers to the taxpayer. Even if the taxpayer had been allowed to assert his privilege under these circumstances, such a transfer would have constituted contempt by the accountant.

 In the circumstances here there is no basis for permitting the Res to suppress these papers on the theory that their privilege against self-incrimination was denied them because Blois did not choose to commit a contemptuous act. The only other possibility is that had Blois been given additional notice, the Res would have had an opportunity to alter or destroy documents and this can scarcely be said to be a ground for their suppression.

 Finally, it is difficult to see how excusing Blois from appearing forthwith before the grand jury on January 23 in any way transformed the subpoena procedure used into an unlawful search and seizure. Having in effect requested and obtained an adjournment, Blois was in no position to complain that the forthwith requirements of the subpoena as drawn were not insisted upon. While it may not be the function of the United States Attorney to excuse a witness from appearing before a grand jury, United States v. Birrell, 242 F.Supp. 191 (S.D.N.Y.1965), under the circumstances of this case it is plain that the Government could gain no possible advantage by the delay, either at the expense of Blois or of the Res, and that the arrangement was made solely for the convenience of Blois. It does not lie in the mouth of the Res, who vigorously attack the forthwith nature of the subpoena, to complain that the Government gave Blois extra time to comply.

### Fifth Amendment

 Defendants' assertion that their privilege against self-incrimination was invaded is without merit.

Whether Blois had title to the documents or not, concededly he had possession of them with the permission of the Res at the time the subpoena was served. Under these circumstances the Res were not compelled to incriminate themselves. Rather it was Blois who was compelled to incriminate the Res. As the 9th Circuit has recently stated:

> "Ownership, without possession, of course, does not give rise to a claim of the privilege, for although the owner may watch with regret the giving up of his materials to the Government by their possessor, the compulsion which underlies their surrender is not exercised against him and requires no incriminating disclosure, express or implicit on his part—*he* need not choose among self-accusation, contempt, or perjury. The privilege prevents self-incrimination, not incrimination itself." United States v. Cohen, supra 388 F.2d at 468, n. 9.

 Of course an owner of documents, while not actually in physical possession of the documents, may have such control over them as to be deemed to have constructive possession and in such cases the subpoena should be served on the owner. In such cases the owner may properly assert his privilege against self-incrimination, United States v. Guterma, 272 F.2d 344 (2d Cir. 1959), Schwimmer v. United States, 232 F.2d 855, 860 (8th Cir. 1956), cert. denied, 352 U.S. 833, 77 S.Ct. 48, 1 L.Ed.2d 52 (1956), United States v. Birrell, supra, and apparently the owner or the party in constructive possession on whom the subpoena should have been served may also challenge the service of the subpoena on the party in actual possession as an unlawful search and seizure. However, the facts here do not show that the Res had constructive possession of the Blois papers. Moreover, there is no contention made and there could be none that Blois could have asserted the defendants' privilege against self-incrimination and the fact is that he made no challenge at all to the subpoena.

*Abuse of Process*

Defendants also urge that the Government was guilty of an abuse of process in serving a forthwith subpoena, excusing Blois' immediate appearance before the grand jury and instead accepting the documents on the evening of January 23. These were among the factors which the defendants also contend made the entire procedure used to obtain the documents an unlawful search and seizure. As I have indicated with respect to that issue, a forthwith subpoena is not per se invalid and under the circumstances of this case its use was fully justified. In any case, the defendants have failed to show any prejudice resulting from the use of this forthwith subpoena or from the fact that Blois was permitted to turn over the papers that evening instead of being required to appear forthwith.

Accordingly, defendants' motion to suppress the so-called Blois papers and to dismiss the indictment is in all respects denied. The foregoing constitutes my findings of fact and conclusions of law on this motion to suppress.

It is so ordered.