**UNITED STATES of America**

v.

**William A. HUNTER.**

**No. 2:97–CR–059.**

United States District Court,
D. Vermont.

June 10, 1998.

David Alan Gibson, Brattleboro, VT, for William A. Hunter, defendant.

James J. Gelber, Asst. U.S. Atty., Paul J. Van de Graaf, Office of the U.S. Atty., District of Vermont, Burlington, VT, for U.S.

*RULING ON DEFENDANT'S*
*OUTSTANDING*
*MOTIONS*

SESSIONS, District Judge.

Defendant William Hunter has filed two motions to dismiss the indictment (papers 60 and 70); a motion for bill of particulars (paper 71); a motion to reconsider this Court's oral ruling on selective prosecution (paper 80); a motion to exclude evidence pertaining to bank accounts (paper 83); and a motion to quash subpoena (paper 100).[1]

### I. *Motions to Dismiss Indictment*

In the first motion, Hunter asserts that the indictment is insufficiently specific, in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution. In the second motion, he asserts that the indictment is defective because the signature of the United States Attorney is illegible. Both motions are denied.

■ The indictment charges the Defendant with ten counts of mail fraud and one count of bankruptcy fraud. Intent to defraud is an essential element of both offenses. *United States v. Rodolitz*, 786 F.2d 77, 80 (2d Cir.1986); *United States v. Guiliano*, 644 F.2d 85, 87 (2d Cir.1981).

■ Rule 7(c)(1) of the Federal Rules of Criminal Procedure provides that an indictment must be a "plain, concise and definite written statement of the essential facts constituting the offense charged." F.R.Crim.P. 7(c)(1). Under this Rule "the facts alleged must be adequate to permit a defendant to plead former jeopardy upon prosecution," and "sufficiently specific to enable the defendant to prepare a defense." *United States v. Macklin*, 927 F.2d 1272, 1276 (2d Cir.1991) A review of the mail fraud counts of the indictment[2] reveals that, although the precise phrase "with intent to defraud" does not appear, the counts allege that the Defendant "devised a scheme and artifice to defraud law clients and others." This language, plus the detailed facts concerning schemes to defraud

and the correct statutory citation, have provided adequate notice of the offense charged. *See e.g., United States v. Hernandez*, 980 F.2d 868, 871–72 (2d Cir.1992).

■ Hunter argues that because the indictment does not identify the specific individuals defrauded, or the exact date on which or location other than the District of Vermont where the offenses are alleged to have occurred, the indictment fails to give constitutionally adequate notice. He has cited no cases in support of his contention. The Second Circuit has "consistently sustained indictments which track the language of a statute and, in addition, do little more than state time and place in approximate terms." *United States v. Salazar*, 485 F.2d 1272, 1277 (2d Cir.1973). There is likewise no constitutional requirement that the victims of the fraud be identified in the indictment. *See e.g., United States v. Brennan*, 938 F.Supp. 1111, 1127 n. 20 (E.D.N.Y.1996). Accordingly, the Defendant's first motion to dismiss is denied.

■ In the Defendant's second motion to dismiss, he calls attention to the signature of the attorney for the government on the last page of the indictment. He contends that the signature is not that of United States Attorney Charles R. Tetzlaff, that it is impossible to determine who signed the indictment on behalf of the government, and that the absence of an identifiable signature renders the indictment defective. The government responds that Assistant United States Attorney Paul Van de Graaf signed the indictment. In the absence of any suggestion that AUSA Van de Graaf was not authorized to sign the indictment on USA Tetzlaff's behalf, the Court will deny the motion.

### II. *Motion for Bill of Particulars*

■ Pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure, Hunter seeks the exact date and other details of letters through which the government intends to prove mail fraud. He also seeks discovery of the government's theories of the case and

---

1. Defendant's motions to suppress (paper 47); for limited reopening of evidence (paper 81); and renewed motion for *Franks* hearing (paper 99) are addressed separately.

2. Counts two through eleven incorporate the allegations of count one.

additional details about documentary and testamentary evidence the government intends to introduce at trial.

■ The decision whether to grant a bill of particulars is within the sound discretion of the court. *United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir.1988). A defendant is entitled to seek a bill of particulars in order to "identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir.1987). *See also United States v. GAF Corp.*, 928 F.2d 1253, 1260 (2d Cir. 1991).

■ The Second Circuit has emphasized that disclosure of evidentiary detail is not the function of a bill of particulars. *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990). It is not available to compel the government to disclose its legal theory or the details of how it intends to prove the charges. *United States v. Wilson*, 565 F.Supp. 1416, 1439 (S.D.N.Y.1983).

The indictment in this case sets forth the nature of the charges and the means used to commit the alleged crimes in sufficient detail. The information sought by Hunter is not necessary to provide adequate notice of the charges he is facing. Rather, Hunter is attempting to use the motion for a bill of particulars for discovery purposes. The requests resemble civil interrogatories. He seeks primarily the government's theories of the case and its intended use of documents which have been or will be disclosed in discovery. In that regard, a defendant is entitled to just such information as may be disclosed pursuant to Fed.R.Crim.P. 16(a). To require the government to disclose information beyond the scope of Rule 16(a) would violate the purpose of the discovery rules and the purpose of a bill of particulars. In the exercise of its discretion, the Court denies the motion.

### III. *Motion to Reconsider Ruling on Selective Prosecution*

On December 2, 1997, Hunter filed a Motion for Discovery or to Dismiss Charges on Grounds of Selective Prosecution, arguing that the Government instituted this prosecution in essence to deflect criticism for its late-night search of his residence. Hunter filed an amended motion on January 16, 1998. The Court denied the motion in an oral ruling on March 19, 1998, concluding that Hunter had failed to show that the Government had instituted the prosecution for an invidious or discriminatory purpose. Hunter has moved to reconsider the Court's oral ruling, offering additional evidence which he deems relevant and conclusive proof of the government's improper motive.

■ The government has broad discretion over decisions to initiate criminal prosecutions. *See United States v. Armstrong*, 517 U.S. 456, 464, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996). The standard for demonstrating selective prosecution therefore is demanding: a "presumption of regularity supports . . . prosecutorial decisions and 'in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties.'" *Id., (quoting United States v. Chem. Found., Inc.*, 272 U.S. 1, 14–15, 47 S.Ct. 1, 71 L.Ed. 131 (1926)).

■ A prosecutor's discretion is subject to constitutional constraints, of course. *United States v. Batchelder*, 442 U.S. 114, 125, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979). To support a claim of selective prosecution, a defendant must establish a violation of the equal protection component of the due process clause of the Fifth Amendment to the United States Constitution. Essentially, the defendant must show "that [a] federal prosecution policy had a discriminatory effect and it was motivated by a discriminatory purpose." *Armstrong*, 517 U.S. at 465, 116 S.Ct. 1480. Under Second Circuit precedent, the defendant must prove:

"1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against [the defendant], he has been singled out for prosecution,

and (2) that the government's discriminatory selection of [the defendant] for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights."

*United States v. Fares,* 978 F.2d 52, 59 (2d Cir.1992) (quoting *United States v. Sun Myung Moon,* 718 F.2d 1210, 1229 (2d Cir. 1983)).

Before a defendant is entitled to discovery or an evidentiary hearing on a claim of selective prosecution, "a defendant must present at least 'some evidence tending to show the existence of the essential elements of the defense and that the documents in the government's possession would indeed be probative of these elements.'" *Fares,* 978 F.2d at 59 (quoting *United States v. Berrios,* 501 F.2d 1207, 1211–12 (2d Cir.1974)). "Mere assertions and generalized proffers on information and belief are insufficient." *Fares,* 978 F.2d at 59.

At the March 19th hearing, the Court assumed that Hunter had been singled out for prosecution as compared to other attorneys who were alleged to have committed similar acts. The Court's refusal to permit discovery or an evidentiary hearing or to dismiss the indictment was based upon the second prong of the *Fares* standard, that is, that Hunter failed to show invidious discrimination or bad faith in bringing this prosecution.

Hunter's Motion to Reconsider offers evidence which he asserts demonstrates bad faith and justifies reversing the oral ruling, ordering further discovery, and ultimately dismissing the indictment. Hunter's evidence of bad faith can be categorized as follows: (1) critical publicity concerning the late-night search of Hunter's residence; (2) the nature and extent of the criminal investigation; (3) the nature of the charges; (4) the Government's leaking of information about grand jury proceedings to the press; and (5) the nature of the government's press release.

The government received widespread criticism for the late-night search of Hunter's residence, from neighbors, friends, attorneys and other citizens, as well as Hunter and his wife. Much of the criticism was published in various newspaper articles and news broadcasts. Hunter cites the reaction of a Justice Department representative from Washington who described national broadcast coverage of the issue as "a new low in broadcast journalism." The Court accepts Hunter's assertion that this level of criticism directed at government officials is relevant to motive in bringing criminal charges. However, this observation without more does not advance beyond mere speculation. Hunter has proffered no evidence of any kind that any members of the United States Attorney's Office in this case were influenced by the criticism. Moreover, the publicly criticized search was authorized by U.S. Magistrate Judge Jerome Niedermeier upon a finding of probable cause which has been upheld by this Court as constitutionally permissible. Speculation as to these prosecutors' reactions to negative publicity does not justify further discovery into the government's motives for bringing these charges.

Hunter's reliance on the nature and extent of the investigation and the subsequent criminal charges is likewise unavailing. He objects to the extent of the resources the government committed to the prosecution, including the involvement of DEA agents. The case commenced as a drug investigation directed by the Drug Enforcement Administration. The fact that DEA agents remained involved in an investigation which resulted in mail and bankruptcy fraud charges is of little significance. Whom the government uses to conduct its investigations is generally not a concern of the judiciary since that is a matter best left to the discretion of the executive branch of government. Regardless, in light of the close connection of this investigation to the Sargent drug conspiracy investigation, it does not seem unusual for DEA agents to remain involved with this investigation.

Absent a violation of federal law, the extent of a criminal investigation is also a matter best left to the discretion of the prosecutor. No such violation is asserted here. And the government's selection of charges to level against Hunter is also a matter left to the prosecutor's discretion, absent a violation of

federal law. No such showing has been made here.

Hunter offers no evidence that the government leaked information presented to the grand jury.

Finally, Hunter proffers expert testimony that the press release announcing the criminal charges was "longer, harsher, and more negative" than all other press releases over the past two years. Assuming that the press release was accurately characterized, it has minimal relevance to determination of the government's motive.

■ Hunter's proffer does not establish evidence tending to show the existence of bad faith nor that the government is in possession of any material that would be probative of a claim of selective prosecution. To warrant discovery with respect to a claim of selective prosecution, a defendant must make such a showing. *Fares,* 978 F.2d at 59. Permitting discovery of the reasons for a criminal prosecution is an extraordinary step, delaying the criminal proceeding and compromising the government's ability to prosecute effectively. Because Hunter's evidence remains insufficient to permit discovery into the government's motive in bringing the charges, his motion to reconsider is denied.

## IV. *Motion to Exclude Evidence Relating to Bank Accounts*

Hunter has moved to exclude from trial any evidence related to bank accounts whose numbers were obtained from him during the search of his residence pursuant to warrant on June 9, 1995. As grounds he asserts that the information was acquired in violation of the Fourth, Fifth and Sixth Amendments to the United States Constitution, and that the government violated the discovery rules by withholding notes listing the bank account numbers. For the reasons that follow, Hunter's motion is denied.

### A. *Violation of discovery rules*

■ Hunter's argument that the Court should exclude any evidence about the bank accounts listed in the agents' notes because the notes were not turned over pursuant to his discovery requests is meritless. Hunter admitted that he has been in possession of these notes since the summer of 1995. The failure of the government to produce the notes in discovery can have worked no conceivable prejudice to Hunter, and no sanction is warranted, much less the sanction of exclusion from evidence. *See United States v. Maldonado–Rivera,* 922 F.2d 934, 954 (2d Cir.1990) (upholding trial court's refusal to suppress where defendants were not prejudiced by the failure to disclose); *United States v. Gotchis,* 803 F.2d 74, 78 (2d Cir. 1986) (when there is no evidence that failure to produce is deliberate, proper inquiry is whether defense was so greatly prejudiced as to require imposition of sanctions against government).

### B. *Fourth Amendment violation*

■ The search warrant executed on June 9, 1995 authorized the government to search for documents and records pertaining to financial transactions occurring between January 1, 1992 and June 8, 1995 among specified individuals, including Hunter, and specified business entities. It also authorized the government to search for bank records relating to three specified entities associated with Hunter. During the search, the government did not seize any of Hunter's bank records, although they would have been entitled to search his bank records for records of the specified financial transactions. Instead, the agents recorded the account numbers, either from the bank records themselves or as a result of questioning Hunter. The witnesses' testimony differs on this point, but the result is the same regardless of which way the information was recorded. If the agents obtained the bank account information from statements by Hunter, there has been no Fourth Amendment violation. If the agents recorded the account numbers from the bank records, there has been no Fourth Amendment violation, because the agents would have been entitled to seize the records themselves, under the terms of the search warrant.

### C. *Fifth Amendment violation*

■ Hunter contends that the statements he made, from which the agents obtained

information concerning the bank accounts, were secured in violation of the Fifth Amendment. He claims that he invoked his right to counsel, and that subsequent questioning violated the holding in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Hunter's reliance on *Miranda* in this situation is misplaced, because it applies only to custodial questioning. *Berkemer v. McCarty*, 468 U.S. 420, 442, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). Hunter has not claimed that he was in custody at the time his house was being searched. If a suspect is not in custody, it is immaterial whether he was advised of his *Miranda* rights, and consequently immaterial whether he validly waived those rights, or whether government agents questioned him in spite of his invocation of those rights. Hunter has shown no violation of *Miranda*, and no violation of the Fifth Amendment.

### D. *Sixth Amendment violation*

██ Hunter also claims that the government agents violated his Sixth Amendment right to counsel when they questioned him about the bank accounts. The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. Am. 6. The United States Supreme Court has repeatedly recognized that "the right to counsel attaches only at or after the initiation of adversary judicial proceedings against the defendant." *United States v. Gouveia*, 467 U.S. 180, 187, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984). "[B]efore proceedings are initiated a suspect in a criminal investigation has no constitutional right to the assistance of counsel." *Davis v. United States*, 512 U.S. 452, 457, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994). The Supreme Court has explained adversary judicial proceedings as the time "that the government has committed itself to prosecute, and only then . . . the adverse positions of government and defendant have solidified." *Kirby v. Illinois*, 406 U.S. 682, 689, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972).

At the time the government agents questioned Hunter, the government had not committed itself to prosecute, and Hunter's Sixth Amendment right to counsel had not yet attached. The government did not violate Hunter's Sixth Amendment rights.

### V. *Motion to Quash Subpoena Duces Tecum*

Hunter has moved to quash the government's subpoena commanding the "Yale University Registrar's Office" to appear at trial and to bring "[a]ny and all records conerning [sic] William A. Hunter IV[sic]." The question before the Court is whether the government's subpoena satisfies Federal Rule of Criminal Procedure 17(c), or whether the subpoena should be quashed. Rule 17(c) provides in relevant part:

> A subpoena may also command the person to whom it is directed to produce the books, papers, documents or other objects designated therein. The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive. The court may direct that books, papers, documents or objects designated in the subpoena be produced before the court at a time prior to the trial . . .

Fed.R.Crim.P. 17(c).

██ The subpoena power is available to either party. *See United States v. Re*, 313 F.Supp. 442, 448 (S.D.N.Y.1970) (subpoena duces tecum is legitimate means for Government to obtain records and documents relevant to criminal proceedings); *see also United States v. Woodner*, 28 F.R.D. 22, 23 (S.D.N.Y.1961) (subpoena duces tecum available to plaintiff and defendant).

Hunter points out that under the Family Educational Rights and Privacy Act (FERPA) a university may not disclose a student's educational records without the student's consent unless the disclosure is made pursuant to a valid subpoena. *See* Family Educational Rights and Privacy Act of 1974, 20 U.S.C. § 1232g (1994). Under 20 U.S.C. § 1232g, therefore, the question remains, does the government's subpoena satisfy Rule 17(c)?

██ The purpose of Rule 17(c)'s provision for pre-trial production of documents, subject to court supervision, "was to expedite

the trial by providing a time and place before trial for the inspection of subpoenaed materials." *United States v. Nixon,* 418 U.S. 683, 698–99, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). A subpoena duces tecum in a criminal action may not be used for discovery purposes, however; "the document sought must at that time meet the tests of relevancy and admissibility." *United States v. Marchisio,* 344 F.2d 653, 669 (2d Cir.1965) (quoted in *United States v. Cherry,* 876 F.Supp. 547, 553 (S.D.N.Y.1995)). *See also Bowman Dairy Co. v. United States,* 341 U.S. 214, 220, 71 S.Ct. 675, 95 L.Ed. 879 (1951). In order to require production prior to trial, the government must demonstrate: (1) that the documents are evidentiary and relevant, (2) that they are not otherwise procurable, (3) that the government cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend to unreasonably delay the trial, and (4) that the application is made in good faith and is not intended as a general "fishing expedition." *Nixon,* 418 U.S. at 699–700, 94 S.Ct. 3090.

■ The documents sought are not currently relevant or admissible, but may become so. The government seeks Hunter's undergraduate records in response to Hunter's pre-trial notice that he intends to offer in his defense that he has been diagnosed with Attention Deficit Disorder ("ADD"). The government argues that the documents will be relevant and admissible in its rebuttal case if Hunter in fact offers evidence that he suffers from ADD.[3] If Hunter in fact relies on an ADD defense, his undergraduate records may be relevant to the government's rebuttal case, because his undergraduate records may, or may not, contain evidence of it.

As to the second criterion, Hunter's undergraduate records are not otherwise procura-

ble by the government; they can only be provided by Yale University's Registrar's Office. As to the third criterion, the government has shown that it cannot properly prepare its rebuttal case without production of the records. The Court notes its crowded docket for the next six weeks, and finds that there will be unreasonable delay if pretrial production is not ordered.

Finally, the Court finds that the subpoena was issued in good faith and that the government has not embarked on a "fishing expedition." The government is seeking material relevant to Hunter's potential ADD defense. The subpoena is reasonably specific.

■ The Court will not quash the subpoena. However, because Hunter's undergraduate records are not currently relevant, and may never become so, it is ordered that the subpoenaed records be deposited with the Court rather than the United States Attorney's Office. The records will be placed under seal, and made available to the government if, and only if, the material becomes relevant. In addition, the Court will sign a confidentiality order regarding these records, should Hunter so request.

### ORDER

Defendant's Motions to Dismiss (papers 60 and 70), Motion for Bill of Particulars (paper 71), Motion to Reconsider (paper 80), and Motion to Exclude (paper 83) are DENIED. Defendant's Motion to Quash (paper 100) is GRANTED in part and DENIED in part.

---

**3.** According to the *Diagnostic and Statistical Manual of Mental Disorders* ("DSM–IV"), individuals suffering from ADD must have displayed symptoms of the disorder before the age of seven, and the symptom of "inattention may be manifest in academic, occupational, or social situa-

tions." *Diagnostic and Statistical Manual of Mental Disorders* 78 (4th ed. American Psychiatric Ass'n 1994).